CHARLIE JOHNSON v. STATE.

No. 2202.  Decided February 12, 1913.

1.—Keeping Disorderly House—Evidence—Other Transactions.

Upon trial of keeping a disorderly house, there was no error in refusing to admit testimony as to other complaints against other parties by the State's witness; the latter being an officer.

**2.—Same—Evidence—Acts of Defendant After Arrest.**

Where defendant was prosecuted for keeping a disorderly house for the sale of intoxicating liquors, etc., there was no error in rejecting testimony by the defense that he kept his doors closed after the complaint was filed against him.

**3.—Same—Evidence—General Reputation.**

Upon trial of keeping a disorderly house for the sale of intoxicating liquors without license, testimony as to the general reputation of the place is admissible in evidence. Following Joliff v. State, 53 Texas Crim. Rep., 61.

**4.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions does not disclose what answer, if any, the witness made to the question, the matter cannot be reviewed on appeal. Following Tweedle v. State, 29 Texas Crim. Rep., 586.

**5.—Same—Evidence—Revenue License.**

Upon trial of keeping a disorderly house for the sale of intoxicating liquors without license, there was no error in permitting the witness to testify that he saw an internal revenue license posted in the place of defendant's building.

**6.—Same—Evidence—Contradicting Witness.**

Whenever either the State or the defendant seeks to impair the credit of a witness by a line of investigation, it is permissible for the opposite side to show the real facts in order that the jury may determine whether such circumstances do or do not affect his credit.

**7.—Same—Rule Stated—Contradicting Witness.**

Where, defendant, on cross-examination, elicited the fact from the State's witness that he had been indicted for running a gambling house, there was no error in permitting the State to show that such case was dismissed after an acquittal of one of his co-defendants.

**8.—Same—Evidence—Charge of Court—Social Club—Subterfuge.**

Where, upon trial of keeping a disorderly house for the sale of intoxicating liquors, etc., the defendant elicited testimony that the defendant was president of a social club, etc., but there was no evidence that a charter had been obtained, and that if it had been obtained it was a subterfuge and was no defense against selling liquors without license, and the court so instructed the jury, there was no error in refusing a requested instruction that the burden of proof was on the State in this behalf.

**9.—Same—Charge of Court—Sunday Law.**

Where defendant was charged with keeping a disorderly house for the sale of intoxicating liquors without license, the question of a violation of the Sunday Law was not involved, and there was no error in refusing requested charges thereon; besides, they were not the law.

Appeal from the County Court of Dallas County at Law. Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of keeping a disorderly house for the sale of intoxicating liquors, etc.; penalty, a fine of $200 and twenty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane*, Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted under Article 500 of the Penal Code for keeping a disorderly house, as defined by Article 496, in that he did keep and was concerned in keeping a certain house as a house where spirituous, vinous and malt liquors were sold and kept for sale in quantities of one gallon and less than one gallons, without having obtained a license under the laws of this State to retail such liquors, and his punishment was assessed as provided in Article 500.

While J. W. Daniels was testifying as a witness for the State, on cross-examination he was asked whether or not he had filed complaints against other negro clubs, which question was objected to by the State. As to whether or not this officer had filed complaints against other clubs would be an immaterial inquiry. He did not file the complaint against the appellant in this case. The question in this case was, had this defendant violated the law, and not whether others had done so or not. He was also asked whether or not he had visited the place where defendant was charged with keeping a disorderly house *after* this complaint had been filed, to which an objection was sustained. The bill recites that he would have answered, had he been permitted to do so, that he had visited the place after the complaint was filed and found the doors closed to all persons except members of the club. It was not a material inquiry how the place was run *after the complaint was filed*; he could only be tried and convicted for the manner in which it was conducted *prior* to the complaint. When a person is charged with running a disorderly house under this statute, it has been repeatedly held that testimony as to the "general reputation" of the place is admissible in evidence, and there was no error in permitting this witness and other witnesses to testify as to the general reputation of the place. Joliff v. State, 53 Texas Crim. Rep., 61.

A number of bills were reserved to the testimony of witness W. A. Beal. The first is that an objection was made to the following question propounded by the State: "I will ask you to state whether there was boisterous or what kind of conduct was in there," the house defendant was charged with keeping? As the bill does not disclose what answer, if any, the witness made to the question, the question cannot be reviewed. (Tweedle v. State, 29 Texas Crim. App., 586.) It is shown by another bill that this witness was asked if he noticed any revenue license in this place of business, and that he was permitted to answer that he saw an internal revenue license posted in the place. The objection was "it was inadmissible because the license is the best evidence." It is always permissible for a witness to testify that he saw a revenue license posted in any given place. This is a fact which one can observe, if he sees it posted, and he can testify to it as any other fact. On cross-examination the defendant elicited from this witness that he had been indicted by the grand jury of Dallas County for running a gambling house,

for the purpose of affecting his credit as a witness. On redirect the State then proved that the case had been dismissed against him after under which the indictment had been found against him, had been acquitted. After the defendant had injected into the case the fact that a felony indictment had been returned against this witness to impair his credit, it was permissible for the State to show that the circumstances were such that this fact should not impair the credit of the witness. The fact that this witness was not an officer at the time at which he was charged with running a gambling house was brought out by defendant on cross-examination, then it became permissible for the State to show on redirect examination that while not an officer at that time, yet he was a "special man detailed to keep order at the place" at which he was indicted for running a gambling house. Whenever either the State or defendant seeks to impair the credit of a witness by a line of investigation, it is permissible for the opposite side to show the real facts in order that the jury may determine whether such a circumstance does or does not affect his credit.

When the State closed its testimony, the defendant closed. On cross-examination of the witness for the State the defendant had sought to elicit that he was president of a social club, and in selling the intoxicating liquors he only "dispensed the liquors" to the members of the club. No charter from this or any other State, nor articles of agreement or any other instrument in writing was introduced in evidence showing for what purpose the club was organized, if in fact it was a club. The only fact in this respect testified to which indicates that it had a charter was by Jake Ward, who testified on cross-examination, "the members of the club got the charter." What the charter authorized is not shown by the record, and this instrument not being introduced in evidence, we are left to grope in the dark under what provision of the statutes it was issued, if in fact it had one. This witness does not claim to have seen it, and knows nothing of its contents. In fact he joined subsequently, paying twenty-five cents a week, saying if he did not pay this amount weekly his membership would be forfeited. Appellant requested the court to instruct the jury: "The burden of proof is on the State to prove the defendant's guilt, beyond a reasonable doubt and until the same is done, the defendant does not have to introduce any testimony or to take the stand himself in his defense, and in this case you are instructed that unless the State has proven beyond a reasonable doubt that the Dallas Social Club was not a bona fide club, you will acquit the defendant, even though he did not put on any testimony or take the stand in his own behalf, or if you have a reasonable doubt as whether the State has made such proof or not, you will acquit the defendant, even though you may believe that liquor was dispensed to its members even on Sunday." The first count in the information charged "that one Charlie Johnson, heretofore on the 3rd day

of November, A. D. 1911, in the County and State aforesaid, did unlawfully and directly and indirectly keep and was concerned in keeping a certain house then and there situated, as a house where spirituous, vinous and malt liquors were sold and kept for sale, in quantities of one gallon and less than one gallon, without having first obtained a license under the laws of the State of Texas, to retail such liquors.''

It is thus seen that the State had made no charge as to appellant conducting a place as a social club or any character of club, but charged him individually with the offense. The State offered no proof that a club existed or defendant had any connection with any club. On cross-examination of the State's witnesses the defendant sought to elicit testimony that in selling the intoxicating liquors he was shown to have sold, he was acting for a club, and on this issue the court instructed the jury in his main charge:

''You are further instructed that if you believe from the evidence that the defendant was in the employ of a *bona fide social club* organized for social purposes and not organized for profit, or if you have a reasonable doubt thereof, then you will acquit the defendant. But if you believe that said club was organized and run as a subterfuge to dispense and sell intoxicating liquors, without having obtained a license, and further believe that the defendant was keeper of said place or was concerned in keeping said place, then the defendant would be guilty. * * * In all criminal cases the burden of proof is on the State. The defendant is presumed to be innocent until his guilt is established by legal evidence, beyond a reasonable doubt; and in case you have reasonable doubt as to the defendant's guilt, you will acquit him and say by your verdict 'not guilty.' ''

We think these charges of the court were more appropriate under the evidence than the special charge requested above, and the court did not err in refusing to give this special charge. While the evidence does not disclose that a charter had been obtained, nor what it authorized to be done, if one had been obtained, yet if a valid charter had been introduced in evidence, and the testimony raised the issue that it had been obtained to pursue a business illegally, it would be proper to submit that issue to the jury. And to say the least, we think the evidence clearly raises the issue that if a charter had been obtained, it was obtained for the purpose of selling intoxicating liquors without obtaining a license, and running a joint in connection therewith. J. W. Daniels testified: ''That building down there where this club is run is a two-story frame building and the front door is on Market Street—an east front, and then you go into a hall, and then there is a little office right here by the first room, and then a room back here. There are four rooms, I believe, on the south side of the hall running east and west; then there is a dance hall. This small hall leading from Market Street runs right into what they use as a dance hall, and then there are other rooms there that have tables in

them. And then upstairs they have rooms, and I have seen them carrying drinks up there on waiters and serving them to men and women around tables. I think there are also about four rooms on the north side of that small hall running through the house. There are also chairs and tables in those rooms where they go in there and sit down and drink. I did not see any library or any books in there. I do not remember whether I saw any pool table upstairs. Also noticed a United States Revenue license in there. I do not know whether other clubs in Dallas take out revenue license or not. I do not belong to any clubs or to any secret society that has a club in connection with it. That house down there is a nice commodious building with several rooms. I did see one mattress in the upstairs room; did not see any beds up there, but saw some whores in the house; saw Marietta Lewis and Lady Wright; I know Marietta Lewis is a whore, because I have seen her.''

Other witnesses corroborate this witness as to the character of the place, and W. A. Beal testified: ''Prior to November 7th I saw the defendant, Charley Johnson, in a negro club at the corner of Market and Young Streets in Dallas; he was tending bar there Sunday afternoon; the bar was about some twelve to sixteen feet long, I would say, and the bar was situated exactly like the ordinary saloon bar would be—having a front bar and a back bar, and where they had cigars, liquors, wines and whisky, carrying a stock there like you would see in a saloon; I saw the defendant there on the 5th day of November, 1911. The stuff he was selling was in glass bottles just like they are always in. I saw bottles labeled Hill & Hill, with the seal unbroken, and also some Hill & Hill bottles with the seal broken, and there was also bottles labeled Budweiser beer; both whisky and beer. I saw the defendant approximately make five or six sales of whisky when I was down there prior to the 7th of November, 1911, in quantities like the regular drinks of whisky—less than a gallon served over the bar, just like the ordinary small whisky glass. I also saw the defendant make sales of bottles of beer—as many as five or six sales; saw it all at the time I am speaking of—the 7th of November; have seen him make similar sales as much as a week before the 7th of November, one or two sales of a bottle of beer.

''I observed the rooms in the house. It is rather a roomy house, with some twelve or fifteen rooms to it. In one room it was there the bar was—the bar room—and then in other rooms there were tables and chairs; just small tables, and I saw liquor served on them; never saw them used for anything else; then in one room there was a piano, and the other rooms were all fixed with these little tables and chairs which were being used to serve drinks on. There was a sort of mixed crowd of both men and women, and downstairs some of them were singing, drinking and joking.''

We think this testimony fully authorized the court to submit to the jury whether or not the club, if one in fact existed, was but a subter-

fuge to cover up an unlawful purpose and design, and the jury having so found, we will not disturb their verdict.

The other special charges requested were covered by the court's charge insofar as they are the law. Insofar as the proof showing sales to have taken place on Sunday, there was no allegation in the information in regard to this matter, and the question is not presented in a way we can review it, but we will say there was no error in refusing the charges requested in regard to sales on Sunday, for they are not the law of this State.

The judgment is affirmed.

*Affirmed.*